UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RED 1 INVESTMENTS, INC.,

           Plaintiff,

      v.

AMPHION INTERNATIONAL LTD.,
AMPHION INTERNATIONAL INC.,

         Defendants.

NO. CV-06-279-LRS

**ORDER RE VIOLATION OF
PERMANENT INJUNCTION AND
DENYING BROWN'S MOTION TO
DISMISS**

## I.  BACKGROUND

On August 20, 2005, Red 1 Investments, Inc. ("Red 1") filed a UCC
Financing Statement on a security interest in all accounts, interest,
collateral and intellectual property of Amphion International Limited
("Amphion") which secures a debt obligation associated with the sale of
certain water disinfection and other technologies.  Ct. Rec. 1, Compl.,
Ex. F.  Red 1's financing statement was filed in the Muscogee County
Clerk's Office in the state of Georgia.  Currently, the security interest
of Red 1 has not been satisfied as of today's date.

The present action was filed in this court on September 26, 2006
after Amphion defaulted on its obligations to Red 1.  Ct. Rec. 1.  On
February 28, 2007, the court entered a Default Judgment in favor of Red

ORDER ~ 1

1.  Ct. Rec. 35.  On that same date, the court issued an Order for Permanent Injunction which restrained "[Amphion], [its] agents, employees, and all other persons, firms, or corporations acting or claiming to act in [Amphion's] behalf, or in concert or participation with [Amphion], and any other individual or entity duly served with a copy of this order." Ct. Rec. 36, Permanent Inj., ¶2.  The Judgment and Order were registered in the United States District Court for the Southern District of Georgia on April 9, 2007.  Ct. Rec. 44, Delaney Decl., at 5.   Red 1 ascertained that Vickie Brown and/or Coastal Logistics, Inc. ("Coastal") were in possession of property subject to Red 1's security interest.  In April 2007, Red 1 effected service of the Permanent injunction by hand delivery to Ms. Brown and Coastal.  Id. at 3.  Despite several requests by Red 1, Ms. Brown refuses to turn over the property subject to Red 1's security interest.  Ct. Rec. 44, Delaney Decl., at 4, ¶10.

On June 8, 2007, after learning of the Court's Default Judgment and Permanent Injunction, Ms. Brown filed a Petition for Declaratory Judgment and injunctive Relief in Superior Court of Chatham County, State of Georgia.  In that petition, Ms. Brown asks the Georgia Superior Court to "temporarily enjoin and restrain any further proceedings" related to Red 1's Default Judgment and Permanent Injunction.  Ct. Rec. 52, at 30, ¶9.  Red 1 is "aggressively defending this action in large part on the basis that issues related to Red 1's interest in the collateral must be adjudicated here in the Eastern District of Washington." Ct. Rec. 55, at 3.

ORDER ~ 2

On or about August 17, Red 1 moved this court for the issuance of a Contempt Order, Ct. Recs. 41, 45, supported by the declarations of Howard Delaney and Donald Condon. Ct. Recs. 43-44. On August 28, 2007 this court ordered Vickie Brown to show cause in writing why she should not be found in contempt of court for violating the Permanent Injunction entered on February 28, 2007, Ct. Rec. 37, for her refusal to turn over collateral to which Red 1 Investments has a security interest. Red 1 requested that Vickie Brown be enjoined and stayed from selling any collateral in which Red 1 Investments has advised Vickie Brown of its security interest in the same and applicability of the Permanent Injunction.

On August 30, 2007, as reflected by the Affidavit of Service filed with the court, Ms. Brown was served with a copy of the show cause order and related pleadings. Ct. Rec. 48. On September 28, 2007, Ms. Brown filed, in response to the Show Cause Order, "Vickie Brown's Motion to Dismiss for Lack of Personal Jurisdiction and for an Award of Attorneys' Fees," Ct. Rec. 49. The issue squarely before this court is whether the court that orders a Permanent Injunction may exercise jurisdiction over a nonparty, Georgia resident that allegedly knowingly aided and abetted a violation of the Permanent Injunction.

**II.  ANALYSIS**

Before the court can reach the question of whether Ms. Brown actually disobeyed the order, two jurisdictional questions must be resolved. The first question is whether this court has personal jurisdiction over Ms. Brown. The second question is whether this court has subject matter jurisdiction to proceed against her.

ORDER ~ 3

**A. Preliminary Jurisdiction**

At the outset of the analysis, this court must first determine if it has jurisdiction over Vickie Brown. Initially, the court asserts jurisdiction to determine whether it has personal jurisdiction over Ms. Brown, a nonparty outside the territorial jurisdiction of the Eastern District of Washington, in order to properly hold that she is or is not in contempt. The power of the court to exercise this preliminary jurisdiction is well settled, and Ms. Brown does not dispute that the court has such authority. *See United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 667, 695-96, 91 L.Ed. 884 (1947); *Familia de Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1137 (5th Cir.1980); *Atlantic Las Olas, Inc. v. Joyner*, 466 F.2d 496, 498 (5th Cir.1972); 13 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2d, § 3536 (1984).

Non-parties may be held in civil contempt of a court ordered injunction on the grounds that they are either: (1) successors in interest to parties bound by the order or (2) aiders and abettors to a violation of the order by a party thereto. *See generally Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945). This common law principle is codified in Rule 65 of the Federal Rules of Civil Procedure which provides that orders are binding upon parties to the order and their "officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d). The party seeking to enforce the terms of an injunction against a non-party bears the burden of showing that the

person sought to be enjoined is properly within the scope of the injunction. *People v. Operation Rescue National*, 80 F.3d 64, 70 (2d Cir.1996).

It has long been held, at least in the Second Circuit, that one who, with actual notice of the order, "knowingly assists a defendant in violating an injunction subjects himself to civil ... proceedings for contempt." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir.1930). For such entities to be held in contempt they must aid and abet the party named in the order ...." *Id.* at 832; *Paramount Pictures Corp. v. Carol Publishing Group, Inc.*, 25 F.Supp.2d 372, 374 (S.D.N.Y.1998), *aff'd. mem.*, 181 F.3d 83, 1999 WL 319328 (2d Cir.1999). Thus, a non-party who is alleged to have acted in concert to aid and abet a violation of an injunction can be held in contempt only upon the "predicate" finding that the enjoined party has violated the order. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2nd Cir. 2002). Contempt will not lie against one who "acts independently and whose rights have not been adjudicated." *Paramount Pictures Corp.*, 25 F.Supp.2d at 374, *quoting, Heyman v. Kline*, 444 F.2d 65, 65-66 (2d Cir.1971).

The Fifth Circuit held in *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986) that nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. The *Waffenschmidt* court opined this is so despite the absence of other contacts with the forum. In *Waffenschmidt*, the

ORDER ~ 5

resident defendant had defrauded the plaintiffs in connection with the sale of securities. The resident defendant then passed the ill-gotten gains on to nonresident defendants, who proceeded to "dissipate" the money. When ordered to show cause why they should not be held in contempt, the nonresident defendants (who had never been parties to the action and who had not been named in the injunction) defended on the ground that there was no personal jurisdiction. The court held that the nonresident, nonparty defendants were "subject to the court's jurisdiction as persons enjoined by the court's order." *Id*. at 715. The Fifth Circuit affirmed:

> When [respondents] knowingly participated in
> [defendant's] scheme to dissipate the funds they
> equally knowingly subjected themselves to the
> jurisdiction of that court.

Id. at 717.

Ten years later, in *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995), it appears the Ninth Circuit, which this court is bound to follow, expressed its approval of the Fifth Circuit's finding of "super-contact" by the *Waffenschmidt* court:

> In finding this "super-contact," the district court
> relied on the Fifth Circuit's decision in
> *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th
> Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct.
> 794, 88 L.Ed.2d 771 (1986). In that case, the Fifth
> Circuit found that "[n]onparties who reside outside
> the territorial jurisdiction of a district court may
> be subject to that court's jurisdiction if, with
> actual notice of the court's order, they actively aid
> and abet a party in violating that order." *Id*. The
> Fifth Circuit based its decision on both the inherent
> authority of a court to enforce its injunctions and
> the idea that a knowing violation of an injunction
> would make litigation in the forum that issued it
> foreseeable, and therefore within the notions of fair
> play and substantial justice. *See id*. at 716-18,

721-23; Fed.R.Civ.P. 65(d). Although *Waffenschmidt* speaks in expansive terms, it was speaking about the authority of district courts within the United States. The court grounded its decision on the simple fact that the "mandate of an injunction issued by a federal district court runs nationwide...." *Id.* at 716. That being so, the court could hold enjoined parties in contempt, no matter in what state they violated the court's orders. *Id.* As the court went on to say: "The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders." *Id.* at 717. Once the court accepted that proposition, it is not surprising that it determined that a national court which could issue nationwide orders could also reach out and enforce those orders on a nationwide basis by taking personal jurisdiction over violators. Of course, in *Waffenschmidt* the individuals held in contempt had accepted assets from the enjoined party after they knew that he was enjoined from transferring those assets. *Id.* at 723. A finding of personal jurisdiction over the violators in that instance may be sound, even necessary. But the strength of the analysis begins to crumble when a district court seeks to reach out across the Atlantic in an attempt to impose conflicting duties on another country's nationals within its own borders.

*Reebok*, 49 F.3d at 1391-92.

The next part of the court's analysis will examine the facts to determine if Vickie Brown was 1) subject to jurisdiction under the traditional "minimum contacts" analysis; and/or 2) knowingly violated the Permanent Injunction by active concert or participation with those directly enjoined. As *Waffenschmidt* suggests and the Plaintiff argues, it is the common law power to enforce its own injunction which district courts inherently possess coupled with the knowing, voluntary acts of Ms. Brown that form the basis for the court's proper exertion of personal jurisdiction over her in this contempt proceeding. Citing *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62

ORDER ~ 7

L.Ed.2d 490 (1980) *Waffenschmidt* specifically instructs that "[h]aling a person into court only upon finding that the nonparty has aided in knowingly violating an injunction fulfills traditional notions of fair play and substantial justice because it is foreseeable that the person would be required to respond in that forum." *Waffenschmidt*, 763 F.2d at 721.

Ms. Brown, on the other hand, vigorously argues that the assertion of jurisdiction over her violates minimum due process requirements as established by *International Shoe* and its progeny.  Ct. Rec. 58 at 14. Plaintiff counters that by finding a nonparty has aided a party in knowingly violating an injunction, due process is satisfied.  Ct. Rec. 55 at 9.   In other words, Plaintiff seeks to hold Ms. Brown responsible for the intended consequences which her purposeful nonforum activities had on the subject matter of the court's order.  Plaintiff implies that Ms. Brown cannot complain that it was unforeseeable or unreasonable for her to be haled before the court.  Id. at 10.

B.  Vickie Brown's Knowledge

The court has considered all of the declarations, including the "Plaintiff's Supplemental Opposition to Vickie Brown's Motion to Dismiss,"[1] which was filed on October 17, 2007.

---

[1]Ms. Brown objects to the supplemental brief and accompanying Stoneberger declaration due to its "untimeliness."  Ct. Rec. 58 at 4. However, Ms. Brown has filed a responsive declaration to Plaintiff's supplement, , Ct. Rec. 59, which the court will equally consider.

ORDER ~ 8

Ms. Brown asserts that she essentially stumbled upon the Collateral (some of Amphion's equipment) by mistake at a storage facility in Savannah, Georgia known as Coastal Logistics near the end of October[2] 2006. Ct. Rec. 52, Brown Decl., ¶¶ 14-16. Evidence indicates that Ms. Brown attended an emergency shareholders meeting in March 2006 in which it was discussed that Amphion assets were being held in storage and needed to be retrieved. Possible locations were discussed, including the storage unit in Savannah, Georgia. Condon Decl., ¶¶ 7-9.

Ms. Brown asserts that she paid for the Collateral with her own funds. Ct. Rec. 52, Brown Decl., ¶ 17. Plaintiff points out that Ms. Brown does not disclose to the court how much she paid, when the payment was issued, or to whom she paid. Ct. Rec. 55. At 4. Without such evidence, it is difficult to prove she is a "bona fide" purchaser of the Collateral.

On April 4, 2004, Red 1 filed a UCC-1 Financing Statement that put the state of Georgia on notice of its superior interest in the Collateral. Ct. Rec. 1, Compl., Ex. F. Ms. Brown claims that she did not know Red 1 had a security interest in the Collateral until April 18, 2007. Ct. Rec. 52, Brown Decl., ¶ 18. Contrary evidence indicates, however, that Ms. Brown should have been aware of Red 1's claim in the Collateral and that Red 1 had filed a UCC-1 Financing Statement security interest as early as September 4, 2006 when Amphion (AII) Board Chair Darryl Wagner sent an e-

---

[2]In another declaration of Ms. Brown filed on October 24, 2007, she states that her purchase of the Collateral was made in November of 2006. Ct. Rec. 59, ¶3.

ORDER ~ 9

mail to AII Board members, shareholders, and investors advising them of a UCC filing on April 4, 2004 by Red 1 on Amphion (AII and AIL). Stoneberger Decl., Ex. A at 6. Ms. Brown was a recipient of this e-mail notice. Id. at 5. At the latest, though, according to Ms. Brown's April 5, 2007 e-mail to Dr. Condon, she had talked to her attorney and was aware of Red 1's interest in the collateral. Ct. Rec. 43, at 28. In any event, the evidence indicates that Ms. Brown was aware of Red 1's security interest prior to April 18, 2007, the date she claims to have learned of the security interest.

Ms. Brown replies in her latest declaration of October 24, 2007 that although she read most of the e-mails, she did not even know what a "UCC" was. Ct. Rec. 59, ¶3. Ms. Brown further states that despite the e-mail sent to her on September 4, 2006, she did not have an understanding that Red 1 claimed to have a security interest in the equipment which she purchased from Coastal until Red 1 informed her of that claim in April 2007. Id. Ms. Brown further declares that she thought the equipment she purchased was simply "abandoned." Id. Yet in Ms. Brown's e-mail to Dr. Donald Condon she states that "I've done my due diligence. I made sure when I purchased the equipment I was within my full legal rights to do so." Ct. Rec. 43, at 9. Plaintiff argues and the court agrees, that had Ms. Brown done her "due diligence" she surely would have uncovered Red 1's UCC Filing Statement.

C.  Aiding/Abetting

Ms. Brown claims that she did not purchase the Collateral for Amphion or their investors. However, based on the e-mails with Dr. Condon in January and March 2007, one could conclude that she was advancing the

interests of all shareholders.  Ct. Rec. 52, Brown Decl., ¶ 18; Ct. Rec. 43, at 6-7, 13.    Plaintiff argues that although Ms. Brown portrays an image to the court of someone who was not active with Amphion during the time Red 1 was attempting to seize the Collateral, the various e-mails demonstrate that Ms. Brown was part of the decision-making group who was updated on Amphion's interests and frequently gave her opinions on a course of action.  Ct. Rec. 57, at 3.  For example, On September 4, 2006, AII Board Chair Darryl Wagner recommends that Vickie Brown or Brett Stoneberger send out an update to Amphions investors in "regards to action and our plan to contact Delaney [Red 1]."  Stoneberger Decl., Ex. A at 6. On that same day, September 4, 2006, Ms. Brown sent an e-mail in response to the Wagner e-mail giving her advice and opinion on sending out an update to the AII investors.  Id. at 5.  Further, on November 26, 2006, after the date Ms. Brown allegedly purchased the Collateral from Coastal, Vickie Brown sent an e-mail to AII demonstrating her active involvement in AII and in finding the Collateral in which Red 1 has an interest. Specifically Ms. Brown stated:

> If Red One (Howard Delaney) has foreclosed on the company what does Limited or Inc now have? . . . When Howard seized the equipment was he able to seize all of the equipment and units?  Were all the units in tact?  Did John Gill hide part of the equipment or was everything turned over to Red One?

Id. At Ex. C at 12.

The evidence shows the Ms. Brown was actively involved with Amphion while Red 1 was attempting to legally account for its security interest.

/ / /

/ / /

/ / /

ORDER ~ 11

D.  Minimum Contacts Analysis

The starting point in any determination of personal jurisdiction, of course, is the "minimum contacts" analysis first enunciated in *International Shoe Co. V. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945). The Ninth Circuit has broken down the "minimum contacts" analysis into three requirements that must be met before a nonresident defendant can be subjected to an exercise of jurisdiction.  *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  The first requirement is that the defendant has done some act or consummated some transaction with the forum or performed some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.  The second requirement is that the claim must be one which arises out of or results from the defendant's forum-related activities.  The third requirement is that the exercise of jurisdiction be reasonable.

Ms. Brown argues that she resides in Effingham County, Georgia; has never traveled to the State of Washington; has never transacted business in the State of Washington; and has no contacts whatsoever with the State of Washington.  Brown Decl.  Ms. Brown further notes that she owns no property and has never transacted business with Red 1.  Id.  Plaintiff argues that Ms. Brown meets this "minimum contacts" requirement based on the fact that in Ms. Brown's case, she has aided a party in knowingly violating an injunction which satisfies due process.  Plaintiff asserts that Ms. Brown, a nonparty and nonresident, is responsible for the intended consequences which her purposeful nonforum activities had on the subject matter of the court's order.  Thus, Ms. Brown is arguably subject

to personal jurisdiction under the "minimum contacts" analysis, although Plaintiff's alternative theory is a stronger argument.

E.  Alternative Finding of Personal Jurisdiction

Plaintiff also argues that Ms. Brown is subject to personal jurisdiction under the language of Federal Rule of Civil Procedure of Civil Procedure Rules 5 and 71, and the injunction in this case. Specifically, Plaintiff Red 1 argues that because Ms. Brown "acted in concert" and "participated" with Defendant Amphion in disobeying this court's orders, she submitted herself to the court's jurisdiction.

Ms. Brown, on the other hand, argues that this court does not have personal jurisdiction over her, and even if it did, she has not violated this court's Permanent Injunction.  Ct. Rec. 51 at 2.  Ms. Brown asserts that in addition to lack of personal jurisdiction, service was improper pursuant to FRCP 4.1 or any other applicable statute or civil rule.

Plaintiff argues that service was proper and Ms. Brown's reading of Rule 4.1 is too restrictive.  Plaintiff supports its argument by explaining that the court in *Waffenschmidt* specifically found an argument similar to Ms. Brown's improper service argument regarding Rule 4.1 as far too restrictive.  The Fifth Circuit noted in its jurisdictional analysis:

> Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

*Waffenschmidt*, 763 F.2d at 716.

The *Waffenschmidt* court also noted that enforcement of an injunction through a contempt action must occur in the issuing jurisdiction because

ORDER ~ 13

contempt is an affront to the court issuing the order.  Id. (citation omitted).  Plaintiff concludes that FRCP Rule 71 gives the District Court the power to enforce orders against "a person who is not a party . .  As if a party." Fed. R. Civ. P. 71.  Citing *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004), Plaintiff argues that Rule 71 permits a district court to use 'the same processes for enforcing obedience to the order as if [he were] a party,' such as holding him in contempt for violating it." By using the processes found in FRCP Rule 5, Plaintiff states that Ms. Brown has been properly served.  The court agrees with Plaintiff and finds it unnecessary to address Ms. Brown's long-arm statute argument.

Where a defendant challenges the sufficiency of personal jurisdiction, the plaintiff must bear the burden of establishing that the court does have jurisdiction. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984).

This step in the analysis necessarily requires the court to determine if Ms. Brown is one that is bound by the injunction.  The court finds wisdom from a district court decision in *Lynch v. Rank*, 639 F.Supp. 69 (N.D.Cal. 1985) which wrote:

> The seminal pronouncements regarding who may be bound by an injunction can be found in *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir.1930), and in *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945). In *Alemite*, Judge Learned Hand stated the general rule on the scope of injunctions:

> [N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. 42 F.2d at 832. In order to be subject to the contempt power, Putnam "must either

abet the defendant, or must be legally identified
with him." Id. at 833. Although Judge Hand wrote his
*Alemite* opinion before the adoption of Rule 65(d),
the pronouncements therein continue to be regarded as
the classic statement of limitations on a court's
equitable powers. Similarly, Justice Jackson's
oft-cited opinion for the Court in *Regal Knitwear*
emphasizes the limits on the permissible scope of an
injunction:

> The courts * * * may not grant an enforcement order
> or injunction so broad as to make punishable the
> conduct of persons who act independently and whose
> rights have not been adjudged according to law.

*Lynch*, 639 F.Supp. 69 at 72.

Although Plaintiff does not include FRCP Rule 65(d) in its analysis,
the court finds this rule telling, especially in light of the recent
amendment[3] in 2007 to this rule. Rule 65(d) reads:

> (d) Form and Scope of Injunction or Restraining
> Order. Every order granting an injunction and every
> restraining order shall set forth the reasons for its
> issuance; shall be specific in terms; shall describe

---

[3]The language in rule 65 was recently amended this year. Rule
65(d)(2) clarifies two ambiguities in former Rule 65(d). The former rule
was adapted from former 28 U.S.C. § 363, but omitted a comma that made
clear the common doctrine that a party must have actual notice of an
injunction in order to be bound by it. Amended Rule 65(d) restores the
meaning of the earlier statute, and **also makes clear the proposition that
an injunction can be enforced against a person who acts in concert with
a party's officer, agent, servant, employee, or attorney**. [Our emphasis
added]. See 2007 Revised Edition Federal Civil Judicial Procedure and
Rules, "2007 Amendments," at pp. 316-17.

ORDER ~ 15

> in reasonable detail, and not by reference to the
> complaint or other document, the act or acts sought
> to be restrained; and is binding only upon the
> parties to the action, their officers, agents,
> servants, employees, and attorneys, and upon those
> persons in active concert or participation with them
> who receive actual notice of the order by personal
> service or otherwise.

Additionally, case law supports the notion that nonparties may be found in contempt of an injunction provided they have actual notice of the injunction and aid or abet in its violation. *See McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 344 (9th Cir. 1966) (citations omitted).  It is clear that for Ms. Brown to be subject to the court's contempt powers, there must be at the very least a strong identity of interests between the enjoined defendant Amphion and the would-be contemnor.   Applied to this case, that means there must exist a commonality of incentives and motivations between Amphion and Ms. Brown. Although Ms. Brown would like the court to view her interests as independent and that her rights have not been adjudged according to law, in an effort to free her from the bounds of the Permanent Injunction, the court cannot do so.

Taking a look at the language of the Permanent injunction, while it is not clear whether Ms. Brown is an agent, she falls within the "all other persons . . . claiming to act in Defendants' behalf, or in concert or participation with Defendants, and any other individual or entity duly served with a copy of this order, are hereby restrained and enjoined from interfering with the plaintiff's security interest."   Ct. Rec. 36, Permanent Inj., at 3, ¶2.  Ms. Brown's argument that as a possible shareholder the Permanent injunction does not apply to her does not square

ORDER ~ 16

with the case law.  Court's orders apply equally to a company's shareholders because they are in privity with the company party.  See *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir.1984) ("A person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his 'virtual representative' in the prior action.") (*quoting United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980).

The court finds Ms. Brown's argument that the Permanent Injunction is too ambiguous to apply to her disingenuous also.  There is no question that Ms. Brown was in privity with Amphion as a shareholder based on her e-mails and the declarations of Dr. Condon.  There is no doubt that the language in the Permanent Injunction would put anyone served with a copy of the same on notice that he or she may be limited in taking certain actions.  Paragraph 2 of the injunction alerts potential contemnors that they should not take any action to interfere with Red 1's security interest in the Collateral which is unambiguously defined.

Ms. Brown does not deny that she has Collateral as she declares that she is seeking a declaratory judgment in the Superior Court of Chatham County, Georgia on June 8, 2007 to determine whether her interest in the equipment at issue is superior to the interest claimed by Red 1.  The court finds that her actions before filing her state court suit would support the "active concert or participation" rationale for establishment of personal jurisdiction.

Having established personal jurisdiction over Vickie Brown for purposes of this contempt proceeding, the court must determine in its

ORDER ~ 17

final step of the analysis whether Ms. Brown has violated the Permanent Injunction. Based on the evidence before the court, it concludes that Ms. Brown has interfered with Red 1's security interest. Ms. Brown was represented by an attorney and the facts indicate she clearly received constructive knowledge as early as April 20, 2004 with the UCC-1 filing in Georgia and that she had actual knowledge of the same as early as September 4, 2006, before her alleged purchase. Ms Brown's actions can not be viewed a wholly independent but rather inextricably connected with Amphion, who was clearly subject to the injunction.

The court finds that Ms. Brown's motion to dismiss this case and her request for attorney's fees must be denied. The district court's power to issue a contempt order depends, at least in part, on its subject matter jurisdiction over the underlying action. Clearly this court had subject matter jurisdiction over the underlying action based on diversity. The court also has personal jurisdiction over the alleged contemnor as explained above. The court finds that Ms. Brown is in contempt of the Permanent Injunction based on the clear evidence before the court.

**IT IS ORDERED** that:

1. Vickie Brown's Motion to Dismiss for Lack of Personal Jurisdiction and for an Award of Attorneys' Fees, Ct. Rec. 49, filed September 28, 2007 is **DENIED**.

2. Vickie Brown is found to be in contempt of the Permanent Injunction issued on February 28, 2007. Vickie Brown is hereby enjoined from selling the Collateral. Vickie Brown shall be required to comply with the Permanent Injunction and surrender the Collateral to Red 1 Investments.

ORDER ~ 18

3.   Plaintiff's request for attorney's fees and costs incurred in investigating, policing, and enforcing the Permanent Injunction is DENIED without prejudice.

4.   The District Court Executive is DIRECTED to file this Order, and provide copies to all counsel, including Vickie Browns's counsel.

**IT IS SO ORDERED.**

**DATED** this 9th day of November, 2007.

                           *s/Lonny R. Suko*
        _____
                    LONNY R. SUKO
              United States District Judge

ORDER ~ 19